# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

A.C., a minor, by JERRY C. and           :
JENNIFER C., his parents,
                                          :
        **Plaintiffs**                         **CIVIL ACTION NO. 3:15-2198**
                                          :
        **v.**
                                          :     **(JUDGE MANNION)**
SCRANTON SCHOOL DISTRICT                  :
and SALISBURY BEHAVIORAL,
HEALTH, INC.,                             :

        **Defendants**                    :

## M E M O R A N D U M

Plaintiffs Jerry C. and Jennifer C., individually and on behalf of their minor son A.C., filed this action alleging that A.C. was discriminated against and denied his right to a free appropriate public education ("FAPE") by defendant Scranton School District ("SSD") due to his disabilities in violation of federal law, including the Americans with Disabilities Act and §504 of the Rehabilitation Act. SSD filed a motion to dismiss, (Doc. 13), arguing that plaintiffs failed to allege that it denied A.C. any services or programs based solely on his disabilities. SSD also moves to strike portions of the factual allegations in plaintiffs' complaint as time barred. Further, SSD moves to dismiss any claims that Jerry C. and Jennifer C. assert on their own behalf under the Americans with Disabilities Act and §504 of the Rehabilitation Act. For the following reasons, SSD's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**. SSD's motion to strike will be **DENIED**.

Plaintiffs also raise federal claims as well as state law claims against

New Story, a private school which provides special education to students, owned and operated by defendant Salisbury Behavioral Health, Inc., (collectively "New Story"). Plaintiffs allege that New Story denied A.C.'s right to FAPE and subjected him to an inappropriate standard of care as well as needless use of physical restraints. New Story filed a motion to dismiss all claims against it contained in Counts III, IV, V and VI of plaintiffs' complaint. (Doc. 14). As discussed below, New Story's motion to dismiss will be **DENIED**.

## I. FACTUAL BACKGROUND[1]

Plaintiffs' complaint, (Doc. 1), alleges that A.C. is a ten year old disabled child with special needs who has been diagnosed with Mixed Development Disorder, Autistic Spectrum Disorder, Mild Mental Retardation, ADHD and Mixed Receptive and Expressive Language Disorder. Based on his disabilities, A.C. is a student who is eligible for special education services as provided by the Individuals with Disabilities Educations Act ("IDEA"). A.C. resides within SSD and is a student of SSD. During the time that A.C. has been a student of SSD, Jennifer C. made repeated efforts to work with the administration for the proper placement and appropriate education of her son.

---

[1]The facts alleged in plaintiffs' complaint must be accepted as true in considering the defendant's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

She complained to SSD about the repeated use of physical restraints on A.C. by SSD staff. Subsequently, SSD transferred A.C. to New Story, since it was licensed and approved to provide special education for elementary and secondary students with mental and physical disabilities. SSD contracts with New Story School to provide education to district students at New Story's facilities. Jennifer C. agreed to A.C.'s transfer by SSD to New Story. Plaintiffs allege that after A.C. was placed at New Story, he was improperly treated, including excessive use of physical restraints on numerous occasions, and that he did not receive the appropriate and required care. This treatment affected A.C.'s physical and emotional well being and hindered his educational progress. As such, plaintiffs' claim that the treatment at New Story deprived A.C. of his right to FAPE and subjected him to an inappropriate standard of care for a child with his needs and disabilities.

On February 6, 2014, plaintiffs advised SSD that they wanted A.C. placed in an appropriate setting back within the district, and it was agreed that A.C. was to be removed from New Story. Plaintiffs also requested an Individualized Education Program ("IEP") meeting. From February 6, 2014 to April 7, 2014, SSD provided no schooling to A.C. On April 7, 2014, A.C. was placed in a 5 by 6 foot room at the Neil Armstrong School within SSD. The room was hot and had no windows, no visual aids or stimulation, and A.C.'s play area was a concrete fenced-in enclosure. An IEP meeting occurred on April 14, 2014, at which time A.C.'s educational goals were discussed as well

as the opinion of Dr. Cyril Puhalla, A.C.'s Board Certified Child Psychologist, that no restraints were to be used on A.C. unless it was an emergency and a last resort.

On April 16, 2014, A.C.'s special education teacher and his assistant teacher's aide ate A.C.'s snacks which visibly upset him and caused him to try and leave the room. The teacher and aide blocked the doorway and A.C. was restrained by the teacher on the floor. The nurse was called and A.C. kicked both the teacher and the aide as he tried again to get out of the room. The teacher threw A.C. to the ground and the aide laid over his legs holding them down. Two days later, a meeting was held to discuss A.C.'s behaviors and his IEP plan going forward. Plaintiffs allege that SSD staff assigned to A.C. did not have training on how to teach and interact with a special needs child and did not have proper restraint training prior to their assignment with A.C. On May 7, 2014, Dr. Puhalla opined that A.C.'s current placement was inadequate.

On May 16, 2014, A.C. was placed in a different room with a better environment and a new teacher and a new aide were assigned. A.C. remained in this environment throughout the 2014 summer months, as part of his Extended School Year ("ESY") services. At the beginning of the 2014 - 2015 school year, a placement and acceptable plan for A.C. was not immediately initiated which led to an IEP mediation that was held on September 11, 2014. Based upon the meeting, an acceptable IEP plan was

formulated and A.C. began attending school on September 22, 2014, three weeks after the start of the regular school year. A.C. was placed in Monticello, a "special education" facility operated by SSD. Plaintiffs allege that Monticello's facilities were inadequate for A.C.'s needs and that his teachers did not properly address his behaviors. Jennifer C. requested another IEP meeting to address A.C.'s issues with Monticello and claimed it was insufficient to meet the goals and requirements of A.C.'s IEP.

Plaintiffs allege that A.C.'s improper treatment and care at Monticello continued and that his teachers were not properly trained. Plaintiffs claim that the agreed plans regarding A.C.'s education were not followed. Following several incidents, plaintiffs assert that it became clear Monticello was not an adequate placement for A.C. and Dr. Puhalla wrote a letter to SSD telling it to properly place A.C. within 60 days. It was then decided that A.C. was to be home schooled and after a one month delay, a home schooling teacher was assigned to A.C. by SSD.

While A.C. was being home schooled, plaintiffs allege that he only received two hours of instruction per day, substantially less than he would have received if he were properly placed. They also allege that during his home schooling, A.C.'s support services, including speech therapy and occupational therapy, were not provided despite repeated requests from Jennifer C. In March 2015, A.C.'s homebound schooling instructor quit and advised that she would no longer be teaching A.C. A meeting was then held

on March 11, 2015 to address A.C.'s proposed placement at Jefferson Center in the emotional support classroom. Even though this placement for A.C. was acceptable to plaintiffs if A.C. received a one-on-one teacher as promised, SSD decided not to place A.C. at Jefferson Center. Plaintiffs also allege that after a meeting with SSD officials they were told no home schooling teacher was available and they were advised that A.C.'s placement would be "Monticello, and that's it" even though it was not a proper placement for him.

For several weeks, Jennifer C. refused to permit A.C.'s placement at Monticello. During this time, A.C. had no teacher and was not provided any schooling and related support services from SSD. Plaintiffs allege that A.C. was denied schooling because of his disabilities and that non-disabled children were not removed from their educational placements and left to sit at home with no educational instruction. Another meeting was held with SSD and plaintiffs were again advised that A.C.'s placement would be Monticello even though it was not a proper environment for A.C. Plaintiffs allege that SSD's decision to improperly place A.C. in Monticello was based upon his disabilities and his need for special education services.

## II.   PROCEDURAL BACKGROUND

The plaintiffs brought this suit on November 17, 2015, (Doc. 1), asserting federal claims against both SSD and New Story under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12131, *et seq*., (Counts

I & III, respectively), and under Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §794, (Counts II & IV, respectively). The plaintiffs also raise state law claims for negligence and intentional infliction of emotional distress ("IIED") against New Story, (Counts V & VI). As relief against SSD and New Story regarding their federal claims, plaintiffs request compensatory damages and attorneys' fees. Plaintiffs request compensatory damages, punitive damages and attorneys' fees against New Story with respect to their state law claims.

Additionally, the plaintiffs submitted the following exhibits with their complaint, (Doc. 2): plaintiffs' April 8, 2015 due process complaint against SSD in which they commenced a state administrative proceedings against the district by requesting a hearing regarding the alleged denial of A.C.'s rights under the IDEA, the ADA and §504[2]; a copy of the plaintiffs' June 2015 settlement agreement with SSD providing, in part, that SSD establish a third party education trust for A.C. in the amount of $50,000; and a copy of the June 23, 2015 conditional 60-day dismissal order regarding the due process hearing signed by the hearing officer. The dismissal order became final on August 23, 2015. Thus, plaintiffs' due process claims were settled but they reserved their right to pursue compensatory damages for discrimination claims pursuant to §504 of the RA and the ADA against SSD and New Story.

---

[2]"[T]he IDEA ordinarily requires that a party exhaust administrative remedies, ..., prior to bringing suit in federal court." Woodruff v. Hamilton Tp. Public Schools, 305 Fed.Appx. 833, 837 (3d Cir. 2009).

On January 22, 2016, SSD filed a motion to dismiss the plaintiffs' complaint with respect to both of their federal claims under Fed.R.Civ.P. 12(b)(6), and in the alternative a motion to strike allegations in the complaint under Fed.R.Civ.P. 12(f) that are time barred. SSD's motion has been briefed and is ripe for disposition, (Doc. 17, Doc. 28, Doc. 33).

On February 2, 2016, New Story filed a motion to dismiss the plaintiffs' complaint with respect to all of their claims under Fed.R.Civ.P. 12(b)(6). New Story's motion has been briefed and is ripe for disposition, (Doc. 29, Doc. 34).

This court's jurisdiction over the plaintiffs' federal claims is based on 20 U.S.C. §1415(i)(2) and 28 U.S.C. §1331. The court's pendent jurisdiction over the plaintiffs' state claims is based on 28 U.S.C. §1337.

## III.   STANDARDS OF REVIEW

SSD's and New Story's motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts"

language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65)).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to

dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, *e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

SSD's motion is also made pursuant to Fed.R.Civ.P. 12(f). SSD argues that under Rule 12(f) the factual allegations in plaintiffs' complaint that are time barred should be stricken. In Tennis v. Ford Motor Co., 730 F.Supp.2d 437, 443 (W.D.Pa. 2010), the court explained as follows regarding a Rule 12(f) motion:

> Under Fed.R.Civ.P. 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) "permits the court, on its own motion, or on the timely motion of a party, to order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Adams v. Cnty. of Erie, Pa., 2009 WL 4016636 at *1 (W.D.Pa. Nov. 19, 2009) quoting Fed.R.Civ.P. 12(f)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Natale v. Winthrop Resources Corp., 2008 WL 2758238 at *14 (E.D.Pa. July 9, 2008) (quoting McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D.Pa.2002)).

> Although courts possess "considerable discretion in disposing of a motion to strike under Rule 12(f), 'such motions are not favored

and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" Thornton v. UL Enterprises, LLC, 2010 WL 1005021 at *2 (W.D.Pa. March 16, 2010) (internal citations omitted). "Striking some or all of a pleading is therefore considered a drastic remedy to be resorted to only when required for the purposes of justice." Thornton, 2010 WL 1005021 at *2 (quoting DeLa Cruz v. Piccari Press, 521 F.Supp.2d 424, 428 (E.D.Pa. 2007) (quotations omitted)).

## IV.   DISCUSSION

### A. SSD's Motion to Dismiss

Insofar as SSD moves to dismiss any claims that Jerry C. and Jennifer C. may be asserting on their own behalf under the ADA and §504 of the RA based on lack of standing, plaintiffs clarify in their brief in opposition, (Doc. 28, at 33), "Jerry C. and Jennifer C. do not seek claims individually on behalf of themselves for violations of the ADA and Section 504." They also explain that "Jerry C. and Jennifer C. seek claims for violations of the ADA and Section 504 on behalf of minor A.C. only." No doubt, Jerry C. and Jennifer C. as A.C.'s parents have standing to bring claims under the ADA and §504 of the RA on behalf of A.C. *See* Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176 (3d Cir. 2009). Thus, SSD's motion to dismiss claims brought under the ADA and §504 of the RA by Jerry C. and Jennifer C. on their own behalf is **DENIED AS MOOT**.

Additionally, SSD moves under Rule 12(f) to strike portions of the factual allegations in plaintiffs' complaint as well as to dismiss any claims

11

against it based on events which occurred before April 8, 2013 as time barred. The parties do not dispute that the IDEA's two-year statute of limitations applies for the violations of the ADA and §504 of the RA in this case since plaintiffs' claims under these statutes are based on A.C.'s alleged deprivation of services under the IDEA.[3] *See* P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 737 (3d Cir. 2009) (Third Circuit held that "the IDEA's two-year statute of limitations applies to claims made for education under §504 of the Rehabilitation Act."). Further, the IDEA's statute of limitations is not subject to common law equitable tolling, including the continuing violation doctrine. *See* D.K. v. Abington Sch. Dist., 696 F.3d 233, 248 (3d Cir. 2012). There are however two statutory exceptions to the IDEA's statute of limitations found in §1415(f)(3)(D)(i)(ii), namely, "plaintiffs must show that the school intentionally misled them or knowingly deceived them regarding their child's progress" or plaintiffs "show[] that the school failed to provide them with a written notice, explanation, or form specifically required by the IDEA statutes and regulations." D.K., 696 F.3d at 246.

There is no dispute that plaintiffs filed their administrative due process complaint on April 8, 2015. (Doc. 2). Thus, SSD contends that plaintiffs'

---

[3]"When Congress reauthorized the IDEA in 2004, it enacted 20 U.S.C. §1415(f)(3)(c), a statute of limitations that requires parents to file a due process complaint no more than two years after the parents 'knew or should have known' about the alleged deprivation, that is, within two years of the reasonable discovery of that violation." G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 604 (3d Cir. 2015).

claims against it premised on events which occurred prior to April 8, 2013 are time barred under the IDEA's two-year statute of limitations and should be dismissed. SSD also contends that the allegations in the complaint pre-dating April 8, 2013 should be struck.

Plaintiffs point out that the limitations period is based upon the discovery rule, *i.e.*, when they knew or should have known of the alleged violations and the basis for their claims. *See* G.L., 802 F.3d at 613 ("Congress... unambiguously provid[ed] in the IDEA that the date from which any limitations period begins to run is the date the parents 'knew or should have known' of the basis for the claim."). They state that this date involves a fact specific inquiry into the nature of a plaintiff's claims and a determination of the date he knew or should have known of the violations. Plaintiffs contend that "[SSD's] motion to strike should be denied because those allegations the District seeks to strike are directly relevant to the District's knowledge of A.C.'s needs, and thus are relevant to an evaluation of whether the District had knowledge that the harm to A.C.'s federally protected rights was substantially likely, and its failure to act upon that likelihood." (Doc. 28, at 32) (citing S.H., 729 F.3d at 263). Plaintiffs then explain, (Doc. 28, at 32-33), as follows:

> Plaintiffs have alleged sufficient facts to plead numerous violations within the applicable two-year period, including the District's failure to provide any education whatsoever in early 2015. The District acknowledges that such claims within the two-year period would be timely. Plaintiffs have also alleged sufficient facts to demonstrate that the Jennifer C. and Jerry C. relied upon the misrepresentations of the District in promising to provide an appropriate placement to A.C., which formed the basis

of their complaint, notably the District's continued use of inappropriate physical restraints, despite knowledge that such restraints were to be used only as a last resort, given the severe detrimental effect on A.C. Paragraphs 50 through 65 should not be stricken, as they reasonably relate to the controversy between the parties, and clearly demonstrate that the District knew or should have known that the subsequent inappropriate physical restraints at New Story and at Neil Armstrong harmed A.C.'s federally protected rights.

Plaintiffs suggest that one of the statutory exceptions to the IDEA's statute of limitations applies, *i.e.*, the misrepresentation exception. Plaintiffs state that they have alleged facts to show that they relied upon the misrepresentations of SSD in promising to provide an appropriate placement to A.C. and nonetheless SSD continued to improperly use physical restraints on A.C. even though it knew that restraints were to only be used when other less severe remedies failed. Plaintiffs have failed to allege that SSD was making representations regarding A.C.'s progress that were untrue or inconsistent with its own assessments. Rather, they allege that SSD was specifically aware that improper physical restraints had been used on A.C. numerous times and that the use of those restraints traumatized A.C. and impeded his progress. They even allege that on occasion they witnessed the improper use of restraints. The alleged conduct by SSD which forms the basis for plaintiffs' claims cannot alone satisfy the exception to the statute of limitations. Since plaintiffs failed to allege that SSD intentionally misled them or knowingly deceived them regarding A.C.'s progress they do not satisfy the first exception at §1415(f)(3)(D)(i). *See* D.K., 696 F.3d at 245-46; Coleman v.

14

Pottstown School Dist., 983 F.Supp.2d 543, 569 (E.D.Pa. 2013) (Because Plaintiffs have not provided evidence of intentional or knowing misrepresentation by the District, they are barred under the IDEA statute of limitations from seeking relief for violations that occurred more than two years prior to the date of their first administrative filing [].").

The court finds that plaintiffs' cannot maintain their federal claims based on allegations pre-dating April 8, 2013 since it is clear, as detailed above, that they knew or should have known of these violations when they allegedly occurred and since they are time barred under the two-year statute of limitations. *See* G.L., 802 F.3d at 614 ("the limitations period of §1415(f)(3)(c) 'begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation--whichever comes first.'") (citation omitted). Thus, "once a violation is reasonably discovered by the parent, any claim for that violation, however far back it dates, must be filed within two years of the 'knew or should have known' date." Id. at 620. The relevant inquiry is not when SSD became aware of A.C.'s needs and when he was eligible for services under IDEA. However, the allegations pre-dating April 8, 2013 shall not be struck from plaintiffs' complaint since they have a clear relation to the controversy and are relevant to the background of the claims alleged by plaintiffs which occurred within the two-year limitations period.

Therefore, SSD's motion to dismiss shall be **GRANTED** to the extent that plaintiffs' cannot assert their federal claims based on allegations pre-

15

dating April 8, 2013. However, SSD's motion to strike plaintiffs' allegations in their complaint pre-dating April 8, 2013 shall be **DENIED** since they are relevant and material to the claims raised by plaintiffs which occurred within the two-year limitations period. *See* Coleman, 983 F.Supp.2d at 569 ("Although Plaintiffs are foreclosed from relief for most of the 2006–2007 school year, the events of the [time] barred period are considered [], alongside with later events, for background and context because Plaintiffs assert that Defendant's IDEA failings spanned the duration of [the student's] time in the District.").

Moreover, SSD argues that plaintiffs have failed to state cognizable claims against it under the ADA and the RA. Since New Story also contends, in part, that plaintiffs fail to state claims against it under the ADA and RA, the court shall discuss both defendants jointly in this regard.

Plaintiffs' allegations as specified above concern issues involving A.C.'s education plan which fall directly under the IDEA, 20 U.S.C. §1400, *et seq*. Also, it is undisputed that A.C. is a student within SSD who is eligible for services under IDEA. Further, plaintiffs settled their IDEA claims alleging denial of a FAPE against SSD. (Doc. 2).

In 1970, Congress enacted the Education of the Handicapped Act, later renamed as the IDEA, to assure that all children with disabilities have available to them a free appropriate public education. The IDEA emphasizes special education and related services designed to meet their unique needs.

The central purpose of the IDEA is to ensure that children with disabilities have a FAPE. 20 U.S.C. §1400(d). The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that ... [a] free appropriate public education is available to all children with disabilities...." 20 U.S.C. §1412(a)(1)(A); Shore Regional High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004); see also C.H. v. Cape Henlopen School Dist. 606 F.3d 59, 65 (3d Cir. 2010) ("Under the IDEA, a state receiving federal educational funding must provide children within that state a 'free appropriate public education'".).

A FAPE "consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." W.B. v. Matula, 67 F.3d 484, 491 (3d Cir.1995) abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 188-89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)).

The "primary vehicle" for implementing a FAPE is the Individualized Educational Program ("IEP"). "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir.1988) (citing 30 C.F.R. §300.347), cert. denied,

17

488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989). Melissa S. v. School Dist. of Pittsburgh, 183 Fed.Appx. 184, 186-87 (3d Cir. 2006).

To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit. Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 349 (5th Cir. 2000). Flexibility to implement an IEP is maintained, yet the school district is accountable for "confer[ring] some educational benefit upon the handicapped child," as required by the IDEA. T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000) (citing Rowley, 458 U.S. at 188-89, 102 S.Ct. 3034). Melissa S., 183 Fed.Appx. at 187.

Plaintiffs raise claims under the RA and the ADA against SSD and New Story. Since the same standards govern both the plaintiffs' RA and ADA claims, except that under the ADA plaintiffs do not have to prove that the defendant received federal funding, the court addresses these claims jointly. *See* Chambers 587 F.3d at189.

The court in Colon v. Colonial Inter, Unit 20, 443 F. Supp. 2d 659, 665 (M.D. Pa. 2006), stated:

> [Section 504] prohibits discrimination against the disabled in federally funded programs. Specifically, the law provides:
>
> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability be excluded from the participation

in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . 29 U .S.C. §794(a).

The IDEA and section 504 provide equivalent requirements. The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled. *W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995).

In order to establish liability for a violation of §504 of the Rehabilitation Act, "a plaintiff must prove that (1) [the individual] is 'disabled' as defined by the [Rehabilitation] Act; (2) [the individual] is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) [the individual] was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,172 F.3d 238, 253 (3d Cir.1999) (citing W.B. v. Matula, 67 F.3d 484, 492 (3d Cir.1995), abrogated on other grounds by A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 803–04 (3d Cir. 2007)). In addition, to prove a violation under §504 "the plaintiff must demonstrate that the school district knew or should have reasonably known of the plaintiff's disability." Coleman, 983 F.Supp.2d at 568.

To obtain compensatory monetary damages under §504 of the RA and the ADA, however, the Third Circuit requires a plaintiff to prove intentional discrimination. S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 261 (3d Cir. 2013). The Third Circuit has also held that "a showing of deliberate indifference may satisfy a claim for compensatory damages under §504 of the RA [and the ADA]." S.H., 729 F.3d at 263; D.E.v. Cent. Dauphin

Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014). The Third Circuit Court in D.E., 765 F.3d at 269, stated:

> To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated ..., and (2) failure to act despite that knowledge." Id. at 265 (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." Id. at 263 (quoting Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011) (internal quotation marks omitted)). It does, however, require a "'deliberate choice, rather than negligence or bureaucratic inaction.'" Id. (quoting Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 276 (2d Cir. 2009)).

In this matter, plaintiffs have alleged that SSD and New Story knew of A.C.'s disabilities. They have also alleged that A.C. suffered discrimination based on his disabilities and that the discrimination was intentional since SSD and New Story were deliberately indifferent to A.C.'s rights. As plaintiffs state, (Doc. 28, at 36):

> Plaintiffs have chronicled a lengthy pattern of inadequate placements and services for A.C., services and placements which were provided to A.C. solely because of his disability, or services which were clearly denied A.C. because of his disability. Plaintiffs have set forth sufficient allegations to allow the court to plausibly infer intentional conduct by the District.

Plaintiffs have also alleged that A.C. was intentionally denied the educational benefits nondisabled children received and that his placements by SSD at New Story, Neil Armstrong and Monticello were based solely on his disabilities. Additionally, plaintiffs have alleged that these environments which provided inadequate services and accommodations and repeatedly employed

excessive use of physical restraints in an improper manner caused A.C.'s injuries. Plaintiffs have further alleged that based solely on his disabilities, A.C. had to remain for several weeks at home without any instruction and services from SSD unlike nondisabled students in the district.

Thus, the motions to dismiss of SSD and New Story for failure to state a claim regarding plaintiffs' RA and ADA claims (Counts I-IV) shall be **DENIED**.

### B. New Story's Motion to Dismiss

The court will now consider the remaining arguments raised in New Story's motion to dismiss which have not been addressed above. Plaintiffs allege that between January of 2013 and February 2014, A.C. suffered about 23 incidents when SSD placed him at New Story involving the use of inappropriate physical restraints resulting in substantial harm to him, including trauma which caused him to urinate in his pants. Plaintiffs also allege that during his time at New Story, due to the repeated inappropriate use of physical restraints, A.C. threatened suicide or to harm himself at least three times. Plaintiffs further allege that New Story continued to use the restraints on A.C. despite being advised by Dr. Puhalla that the restraints should only be used as a last resort.

New Story argues that plaintiffs' claims against it under §504 of the RA, Count IV, fail to state a claim since it is not the local educational agency

("LEA"). New Story contends that the court should dismiss all of plaintiffs' claims against it based on denial of a FAPE since it is a private facility outside of the SSD in which A.C. was placed to meet his educational needs and since it was not the LEA for the purposes of the IDEA. Thus, it states that it had no legal responsibility to provide a FAPE to A.C.

Additionally, New Story contends that the standard used to evaluate whether a student's private placement in a facility is less strict than the standard used to evaluate a school district's IEP and placement. As such, New Story states that it is not subject to the same statutory standard as SSD for providing a FAPE to A.C.

Analyzed under the less strict standard, New Story argues that plaintiffs' RA claims fail since they do not allege that it refused to admit A.C. solely due to his disabilities and since it does not receive federal funding. New Story also states that A.C. was not excluded from its program based on his disabilities. Rather, New Story states that A.C. was admitted into the program because he was disabled and he was voluntary transferred out of the program at the request of his parents on February 6, 2014, when they claimed that New Story was not using physical restraints on A.C. as a last resort as recommended by Dr. Puhalla but were using them as the technique of choice.

Insofar as New Story argues that plaintiffs fail to state a claim against it under §504 of the RA since it is not the LEA, as indicated above, being an LEA is not an element of such a claim. Nor is it an element of an ADA claim.

Moreover, under the IDEA, each LEA must have in effect an IEP at the beginning of each school year for each disabled child "in the agency's jurisdiction." 20 U.S.C. §1414(d)(2)(A). This was the duty of SSD since A.C. resided within this school district. As such, SSD as the LEA had to have an IEP in place for A.C. Thus, since SSD placed, at its expense, A.C. in New Story, a private facility allegedly contracted by SSD to provide education to district students, plaintiffs have sufficiently shown that New Story was subject to the same statutory standard for providing A.C. a FAPE as SSD. *See* 20 U.S.C. §1412(a)(10)(B)(i) (provides that a child with a disability placed by the LEA in a private school to receive special education and related services in accordance with an IEP to provide a FAPE is done at no cost to the child's parents).

Further, plaintiffs alleged that A.C.'s placement at New Story was done in conjunction with and the approval of SSD and that the district paid for this placement. As such, plaintiffs state that "A.C.'s placement at New Story was not a private placement." Also, as plaintiffs point out, the cases which have held that private placements are not subject to the same statutory standards as school districts involved tuition reimbursement for parental placements that were done privately by the parents on their own and not in conjunction with the school district. These cases held that the IDEA required school districts to reimburse parents for the cost of private school when the district had not offered the child a FAPE, and that reimbursement was not required if the

school offered a FAPE and the parents nonetheless unilaterally placed the child in a private school. *See* P.P. ex rel. Michael P. v. West Chester Area School Dist., 585 F.3d 727, 739 (3d Cir. 2009). In the instant case, plaintiffs allege that A.C. was placed in New Story by SSD as part of his FAPE and in association with the services provided to him as a student in the district. Plaintiffs have also alleged due to the continued use of improper restraints when A.C. was placed by SSD at New Story, he was denied the benefits of a proper FAPE and he was discriminated against because of his disabilities. Thus, as discussed above, plaintiffs have sufficiently alleged a *prima facie* claim against both SSD and New Story under §504 of the RA and under the ADA.

Additionally, to state a claim under the RA, unlike the ADA, plaintiffs have to allege that New Story received federal funding. *See* Chambers 587 F.3d at189 n. 20. New Story claims that it does not receive federal funding. At this stage of the case when presented with a motion to dismiss, it is sufficient that plaintiffs have alleged that New Story was receiving federal financial assistance. (Doc. 1, ¶ 223).

To the extent New Story argues that A.C. was not excluded from its program based solely on his disabilities, this is not the complete standard to establish a §504 claim. *See* Chambers, 587 F.3d at 189 n. 19 (Third Circuit noted that "Section 504 of the RA provides that: No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her

or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."). Therefore, New Story's motion to dismiss plaintiffs' federal claims will be denied.

New Story also moves to dismiss plaintiffs' state law tort claim for IIED, (Count VI), under Rule 12(b)(6) for failure to state a claim. New Story argues that its alleged conduct does not rise to the level of "extreme and outrageous" and the harm alleged falls short of "severe emotional distress." New Story states that it was simply using restraint techniques which were expressly authorized by A.C.'s mother and Dr. Puhalla in order to protect A.C. and others from his behavior, and that since restraints were a permitted option to control A.C., their use was not "extreme" or "outrageous."

"To date, the Pennsylvania Supreme Court has not expressly recognized a cause of action for IIED." Wilson v. American General Finance Inc., 807 F.Supp.2d 291, 301 (W.D.Pa. 2011) (citing Taylor v. Albert Einstein Medical Center, 562 Pa. 176, 754 A.2d 650, 652 (2000)). Other courts in Pennsylvania have recognized an IIED claim and have indicated that to state such a claim, a plaintiff must allege extreme and outrageous conduct which intentionally or recklessly causes him severe emotional distress. Id. (citations omitted); Reedy v. Evanson, 615 F.3d 197, 231-32 (3d Cir. 2010). Thus, to state an IIED claim "Defendants' conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hines v. Proper, 442 F. Supp. 2d 216, 224 (M.D. Pa. 2006) (citing Restatement Second of Torts §46, comment (d)(1965); Wilson v. American General Finance Inc., 807 F.Supp.2d at 303. "In addition, Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress." Hines v. Proper, 442 F. Supp. 2d at 224 (citation omitted). "Finally, Pennsylvania law requires some type of physical harm due to the Defendant's outrageous conduct to satisfy the severe emotional distress element." DiLoreto v. Costigan, 600 F.Supp.2d 671, 691 (E.D. Pa. 2009) aff'd 351 Fed.Appx. 747 (3d Cir. 2009) (citations omitted); Allen v. Wells Fargo, N.A., 2015 WL 5137953, *6 (E.D.Pa. Aug. 28, 2015) (citations omitted).

The court finds that the allegations contained in plaintiffs' complaint are sufficient at this stage of the proceedings to state an IIED claim against New Story. *See* Bardelli v. Allied Servs. Inst. of Rehab. Med., 2015 WL 999115, *6 (M.D.Pa. Mar. 6, 2015). Plaintiffs allege that New Story's conduct was extreme and outrageous and that the infliction of emotional distress caused all of them physical injury or harm. Also, A.C.'s parents are not simply basing their IIED claim upon alleged damages suffered by A.C. since they allege they witnessed some of the occasions when physical restraints were used on A.C. by defendants and saw how he was traumatized. (Doc. 1, ¶'s 235-239). Thus, the court will deny New Story's motion to dismiss with respect to Count VI of

the plaintiffs' complaint, *i.e.*, the IIED claim.

As relief against New Story regarding both of their state law claims, negligence and IIED, plaintiffs request compensatory damages, punitive damages and attorneys' fees. New Story moves to dismiss plaintiffs' request for punitive damages. Plaintiffs contend that they have stated a claim for punitive damages against New Story since they "have alleged that New Story was deliberately indifferent to A.C.'s right to be free from discrimination, and described in detail throughout the complaint the actions of New Story which were clearly willful, wanton, intentional, outrageous and extreme in its interaction and education with A.C."

In Burke v. TransAm Trucking, Inc., 605 F. Supp. 2d 647, 651-52 (M.D. Pa. 2009), the court stated, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Also, "punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." (citing Hutchison v. Luddy, 582 Pa. 114, 870 A.2d 766, 770 (2005)). "The defendant's action or inaction must be intentional, reckless or malicious." Hutchison, 870 A.2d at 771. "Thus, in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious

disregard of that risk." Hutchison, 870 A.2d at 772.

At this stage of the case in which plaintiffs have alleged that New Story inappropriately used physical restraints on A.C. over 20 times when he was only 7 and 8 years old and that this conduct traumatized him, the court shall allow plaintiffs' claim for punitive damages in Counts V and VI to proceed against New Story.

As such, the court will exercise supplemental jurisdiction over plaintiffs' state law tort claims against New Story pursuant to 28 U.S.C. §1367(a) since these claims are intertwined with their federal claims. Koehler v. Juniata County Sch.Dist., 2008 WL 1787632, *13-*14 (M.D.Pa. April 17, 2008) (the court held that plaintiff's claims against the defendants for negligence and intentional infliction of emotional distress were not preempted by the IDEA's comprehensive remedial scheme and that the state law claims were intertwined with the federal questions presented).

Finally, New Story argues that plaintiffs failed to exhaust their administrative remedies prior to seeking recovery under the IDEA. New Story states that while plaintiffs recognize in their complaint that they must exhaust administrative remedies, (Doc. 1 at ¶'s 9-11 and 14), they have not established that they have exhausted all administrative remedies. Plaintiffs counter by stating that their IDEA claims were settled when they filed their due process complaint and that compensatory damages were not available at this level. Plaintiffs state that while they settled their IDEA claims and the parties

agreed to an award of compensatory education, which was available for such claims at the due process hearing level, they reserved their right to pursue claims for compensatory damages under §504 of the RA and the ADA against both defendants. Plaintiffs then contend that since compensatory damages were not available under the IDEA and that such damages could not be awarded by the hearing officer, they can file the present action in federal court seeking compensatory damages.

"[T]he provisions of the IDEA granting federal courts jurisdiction only permits suit by a 'party aggrieved by the findings and decisions made' in the administrative process." James S. ex rel. Thelma S. v. Sch. Dist. of Phila., 559 F.Supp.2d 600, 613 (E.D.Pa. 2008) (citing 20 U.S.C. §1415(i)(2)(A)); Batchelor v. Rose Tree Media School Dist., 759 F.3d 266, 272 (3d Cir. 2014) ("In the normal case, exhausting the IDEA's administrative process is required in order for the statute to "grant[ ] subject matter jurisdiction to the district court [ ].") (citation omitted). The court in James S., 559 F.Supp.2d at 615-16, then explained as follows with respect to the exhaustion requirement:

> The IDEA requires that a party exhaust administrative procedures before seeking relief in federal court. See 20 U.S.C. § 1415(i)(2); Honig v. Doe, 484 U.S. 305, 326-27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) ("[J]udicial review is normally not available under [§1415(i)(2) ] until all administrative proceedings are completed ...."). In Pennsylvania, exhausting administrative remedies consists of participating in a due process hearing and taking an appeal to the state appellate body. See 22 Pa.Code §14.162; Blunt v. Lower Merion Sch. Dist., No. 07-3100, 2008 WL 442109, *5 (E.D.Pa. Feb. 15, 2008) (describing two-level review process in Pennsylvania); Kristi H. v. Tri-Valley Sch. Dist., 107 F.Supp.2d 628, 631 (M.D.Pa. 2000) (same). Further, before bringing suit

under Section 504 or the ADA "seeking relief that is also available under the IDEA," a party must exhaust administrative remedies to the same extent as required under the IDEA. See 20 U.S.C. §1415(i); 34 C.F.R. §300.516(e)\. The IDEA administrative exhaustion requirement "allows a school district to bring its expertise to bear and affords the state an opportunity to correct its own mistakes." McKellar v. Com. of Pennsylvania Dept. of Educ., No. 98-4161, 1999 WL 124381, *2 (E.D.Pa. Feb. 23, 1999) (citing McKart v. United States, 395 U.S. 185, 193-95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

"The Third Circuit has recognized exceptions to the IDEA's exhaustion requirement." Id. at 616. "Specifically, the Third Circuit has held that exhaustion may be excused where: (1) it 'would be futile or inadequate'; (2) the 'issue presented is purely a legal question'; (3) 'the administrative agency cannot grant relief (e.g., hearing officer lacks authority to provide a remedy)' or (4) 'exhaustion would work severe or irreparable harm upon a litigant.'" Id. (citing Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)).

The IDEA exhaustion requirement is jurisdictional. Id. (citation omitted); Blunt v. Lower Marion School Dist., 559 F. Supp. 2d 548 (E.D.Pa. 2008) (dismissing unexhausted claims for lack of jurisdiction under Rule 12(b)(1)). "Exhaustion of the IDEA's administrative process is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." Batchelor, 759 F.3d at 272. Thus, "all of [plaintiffs'] claims made pursuant to the IDEA require exhaustion, as do any claims asserted under Section 504 and the ADA, if they seek relief that is available under the IDEA." Batchelor, 759 F.3d at 273. However, the Third Circuit has held that "compensatory and

punitive damages are not an available remedy under the IDEA." Chambers, 587 F.3d at 186. Here, plaintiffs utilized the IDEA's administrative process and obtained a final order by a hearing officer for compensatory education for A.C. As such, plaintiffs can now proceed with their claims under the RA and ADA in which they seek compensatory damages against both defendants.

## V.    CONCLUSION

For the foregoing reasons, SSD's motion to dismiss, (Doc. 13), is **DENIED** with respect to plaintiffs' RA and ADA claims, (Counts I & II), which are based on allegations occurring after April 8, 2013. SSD's motion to dismiss is **GRANTED** to the extent that plaintiffs' allegations pre-dating April 8, 2013 cannot be the basis for their federal claims since they are time barred. SSD's motion to strike plaintiffs' allegations pre-dating April 8, 2013 is **DENIED**. New Story's motion to dismiss, (Doc. 14), all of plaintiffs' claims against it is **DENIED**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 13, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2198-01.wpd